Merrimack
No. 2003-321

ALFRED CARBONE

v.

NANCY S. TIERNEY, ESQUIRE

Argued: June 9, 2004
Opinion Issued: December 10, 2004

*Charles E. Dibble, PC*, of Contoocook (*Charles E. Dibble* on the brief and orally), for the plaintiff.

*Upton & Hatfield, LLP*, of Concord (*Russell F. Hilliard* and *David P. Slawsky* on the brief, and *Mr. Hilliard* orally), for the defendant.

DUGGAN, J. The defendant, Nancy S. Tierney, appeals a jury verdict in Superior Court (*Fitzgerald*, J.) finding her liable for legal malpractice in her representation of the plaintiff, Alfred Carbone. We affirm in part, reverse in part and remand.

Tierney's representation of Carbone arose out of a dispute between Carbone and his son, Daniel. In 1994, Carbone purchased a home in Londonderry. Because he is an inventor, he converted a two-car garage on the property into a laboratory, which he used to conduct research and test his inventions. Carbone used two additional buildings on the property for a woodworking shop and for the storage of chemicals.

Daniel lived in Danvers, Massachusetts with his wife, Lisa, and their two children. Daniel visited Carbone on numerous occasions and encouraged him to sell his home and move into their home in Danvers.

After approximately two years of discussions, Carbone entered into an agreement with his son. Carbone agreed to sell his home and give Daniel the proceeds from the sale. Daniel, in turn, would sell his Danvers home, combine the proceeds from the two sales and purchase a bigger home, large enough to accommodate Daniel's family, as well as Carbone and his laboratory. Carbone and his son further agreed that "if this thing didn't work out," Daniel would return Carbone's money.

To effectuate this plan, on September 9, 1996, Carbone transferred the deed to his home to Daniel's wife, Lisa. Later that month, Lisa sold Carbone's home to a third party and collected $69,812.41 at the closing.

Because Daniel and Lisa's home had not yet been sold, Carbone moved into their basement. He stored two or three pieces of laboratory equipment in their garage and put the rest of the equipment in storage.

Carbone found his new living situation to be "nerve-racking [sic]." As a result, in late October or early November 1996, he told Daniel that he wanted to leave and asked for his money back. Daniel told his father that he could not return the money because he had used it to pay other bills. Because Carbone received only $550 per month in social security benefits and had no other resources, he remained in Daniel and Lisa's basement.

On November 27, 1996, Daniel and Lisa purchased a new home in Danvers. The new home included an apartment for Carbone. It also had a small shed in the yard but, according to Carbone, the shed was not large enough to accommodate his laboratory. Consequently, Carbone purchased a box trailer, placed it on a friend's property and set up his laboratory in the trailer.

After the purchase of the new home, Carbone's relationship with Daniel and Lisa went "[f]rom bad to worse." Carbone had no space for his laboratory and was disturbed by the noisy surroundings. He subsequently moved out of Daniel and Lisa's home.

Approximately one month later, Carbone's friend told him that he had to move the trailer containing the laboratory off the friend's property. Carbone stored some pieces of equipment with other friends and sold, or otherwise disposed of, the rest of the equipment. Eventually, all of the equipment was either sold or destroyed.

In 1998, Carbone hired Tierney to represent him in an action against Daniel and Lisa. Tierney agreed to represent Carbone on a contingency fee basis.

On August 8, 1998, Tierney filed a complaint on Carbone's behalf in the United States District Court for the District of New Hampshire. The complaint alleged diversity of citizenship as the basis for the court's jurisdiction and that the "amount in controversy exceed[ed] $10,000.00 exclusive of interest and costs."

On September 24, 1998, Daniel and Lisa moved to dismiss the complaint. The next day, Tierney sent Carbone a letter informing him that a motion to dismiss had been filed. The letter stated that the motion to dismiss "alleg[ed] no copy of the Complaint was attached with the Summons." Tierney's letter did not mention that the motion to dismiss was also based on the failure to state an adequate amount in controversy. On October 22, 1998, the court dismissed Carbone's complaint for failure to establish subject matter jurisdiction because the complaint failed to allege that

Carbone's damages exceeded $75,000—a requirement for federal jurisdiction in a diversity of citizenship action.

On October 27, 1998, Tierney moved to amend the complaint and for late entry. She also filed three objections to the September 24, 1998 motion to dismiss. Two days later, the motions were returned to Tierney with the following notation: "Motion denied. Case has been dismissed."

On October 30, 1998, Tierney sent Carbone a second letter which stated:

> At the present time, we are in the process of re-serving the complaint. This is being done for the purpose of increasing the requested damage amount to include your laboratory facilities and the like. Needless to say, the other side has filed Motions to Dismiss and we have countered with Objections to said Motions.

On December 2, 1998, Tierney filed a second complaint in the United States District Court for the District of New Hampshire. This time, the complaint alleged that the amount in controversy exceeded $75,000 exclusive of interest and costs. On April 7, 1999, the district court issued an order which, in pertinent part, stated:

> Plaintiff had a full and fair opportunity to litigate the jurisdictional issue in the former action. He chose not to appeal the district court's adverse ruling in that action. He cannot avoid the effect of that ruling simply by filing a new action. Accordingly, the case is dismissed without prejudice to plaintiff's right to reinstate his claim in a state court of competent jurisdiction.

Two days later, Tierney sent Carbone a third letter. She informed her client that she had "received notice from the United States District Court for the District of New Hampshire ... indicating they believe the law suit should be brought in the United States District Court for the District of Massachusetts even though there is diversity of citizenship." Tierney told Carbone that she presumed the court believed that Carbone "would have an easier time collecting from [his] son if the Order issued from a Massachusetts based court."

In April 1999, Tierney filed a complaint in the United States District Court for the District of Massachusetts. The complaint alleged diversity of citizenship as the basis for the court's jurisdiction and that the amount in controversy exceeded $75,000 exclusive of interest and costs. On February 9, 2000, the court dismissed the complaint because Tierney had "failed to establish federal jurisdiction" in the United States District Court for the District of New Hampshire.

On June 9, 1999, while the district court complaint was still pending, Tierney filed a complaint in the Massachusetts Superior Court in Essex County. On March 14, 2000, the superior court sent Tierney a form entitled "Notice of Status Review of the Docket." The form stated: "If this report is not completed and returned to the Clerk's Office within [t]wenty days a dismissal will enter and the docket closed out." Tierney completed the form and, on March 16, 2000, she sent it to the superior court by Federal Express. Nonetheless, in April 2000, the superior court dismissed the complaint. It was later discovered that the court had misplaced the form. Tierney, however, did not inquire of the court as to why the case had been dismissed.

Instead, on May 4, 2000, Tierney wrote to the plaintiff. In pertinent part, she wrote:

> Your matter was ... brought before the Superior Court. On April 28, 2000, an Order of Dismissal was published and sent to this office. At this time, the case could be appealed to the Supreme Judicial Court. However, I believe the effort would be futile as every court which could have heard the matter has quashed all attempts for the case to be heard. We believe, to appeal this, or any of these decisions, would be fruitless and would be a financial hardship to you.

While Carbone's action against Daniel and Lisa was still pending, Lisa filed for bankruptcy. Carbone contacted Tierney and asked her to represent his interests in the bankruptcy by opposing the homestead exemption that Lisa was seeking and the discharge of the debt that was owed to him. A paralegal for Tierney subsequently sent Carbone a letter outlining the steps that Tierney planned to take to represent his interests in Lisa's bankruptcy proceeding. Tierney, however, did not appear at the first meeting of creditors and did not oppose the homestead exemption. Lisa was discharged in bankruptcy on August 18, 1999.

In September 2000, Carbone filed the instant action claiming that Tierney committed legal malpractice when she represented him in his action against Daniel and Lisa. He moved for summary judgment on the legal malpractice claim, as well as his claim for damages. The trial court ruled that Carbone was entitled to summary judgment on the legal malpractice claim but denied summary judgment with respect to damages.

A jury trial was held in January 2003. The jury returned a verdict in Carbone's favor, awarding $69,812.41 in damages for the loss of his residence and laboratory. It also awarded $105,000 to Carbone for the loss of his laboratory equipment. The trial court subsequently ordered interest

to be added to the judgment. *See* RSA 524:1-b (Supp. 2003); RSA 336:1 (Supp. 2003). This appeal followed. We issued an opinion dated August 30, 2004. The plaintiff moved for reconsideration. We granted the motion in part, *see* SUP. CT. R. 22, and withdrew our August 30 opinion.

On appeal, Tierney argues that the trial court erred when it: (1) entered summary judgment in favor of Carbone on liability; (2) ruled that Carbone's claims were not barred by his failure to mitigate his damages; (3) sustained the jury's award of $105,000 in damages for Carbone's lost laboratory equipment; (4) ruled that Tierney had the burden of proving collectibility; and (5) failed to reduce the damage award to reflect the contingency fee that Carbone agreed to pay Tierney. In addition, Carbone cross-appeals, arguing that the trial court erred when it calculated the amount of interest due on the judgment. We address each argument in turn.

Tierney first argues that expert testimony is required to prove proximate causation in a legal malpractice action. Because Carbone failed to provide any expert testimony in the present case, Tierney contends that the trial court erred when it granted Carbone's motion for summary judgment on liability. We agree.

In reviewing a trial court's summary judgment ruling, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the nonmoving party. *Furbush v. McKittrick*, 149 N.H. 426, 429 (2003). Summary judgment may be granted only where no genuine issue of material fact is present, and the moving party is entitled to judgment as a matter of law. *Id.* We review the trial court's application of the law to the facts *de novo. Id.*

It is well established that expert testimony is required where the subject presented is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson. *In the Matter of Gronvaldt & Gronvaldt*, 150 N.H. 551, 554 (2004). On the other hand, expert testimony is not required where the subject presented is within the realm of common knowledge and everyday experience. *Silva v. Warden, N.H. State Prison*, 150 N.H. 372, 374 (2003). These general principles are applicable to legal malpractice actions. *See, e.g., Wong v. Ekberg*, 148 N.H. 369, 373-74 (2002).

To establish legal malpractice, a plaintiff must prove: (1) that an attorney-client relationship existed, which placed a duty upon the attorney to exercise reasonable professional care, skill and knowledge in providing legal services to that client; (2) a breach of that duty; and (3) resultant harm legally caused by that breach. *Furbush*, 149 N.H. at 432.

We have previously held that, absent exceptional circumstances, expert testimony is necessary to inform the jury regarding the skill and care ordinarily exercised by lawyers and to prove a breach thereof. *Wong*, 148 N.H. at 374. We have also assumed, without deciding, that expert testimony is required to prove proximate cause. *Follender v. Scheidegg*, 142 N.H. 192, 193 (1997). Today, we resolve this issue, and conclude that, in most instances, expert testimony is required to prove causation in a legal malpractice action.

▮ In legal malpractice cases, "[e]xpert testimony may be essential for the plaintiff to establish causation. The trier of fact must be able to determine what . . . result should have occurred if the lawyer had not been negligent." 5 R. MALLEN & J. SMITH, LEGAL MALPRACTICE § 33.16, at 116 (5th ed. 2000). "[U]nless the causal link is obvious or can be established by other evidence, expert testimony may be essential to prove what the lawyer should have done." *Id.* We thus hold that expert testimony on proximate cause is required "in cases where determination of that issue is not one that lay people would ordinarily be competent to make." *Delp v. Douglas*, 948 S.W.2d 483, 495 (Tex. App. 1997), *rev'd in part and vacated in part on other grounds*, 987 S.W.2d 879 (Tex. 1999).

In the present case, the trial court characterized Tierney's lack of knowledge about the Federal Rules of Civil Procedure and her failure to contest the dismissal of Carbone's case in the Essex County Superior Court as "obvious breach[es] of . . . equally obvious professional norm[s]." The court further characterized Tierney's failure to oppose both Lisa's bankruptcy and the homestead exemption that she was seeking as complete inaction that resulted in "a blatant breach of the standard of care an attorney owes to her client." The trial court thus ruled that Carbone was not required to offer expert testimony and granted summary judgment in his favor on the legal malpractice claim.

Even assuming that no expert testimony was required to establish the appropriate standard of care and Tierney's breach of that standard, Carbone was nonetheless required to provide expert testimony to establish that Tierney's breach was the legal cause of his injuries. As set forth above, the trier of fact must be able to determine what result would have occurred if the attorney had not been negligent. An analysis of what Tierney should have done and whether her negligence was the legal cause of Carbone's injuries is so distinctly related to the practice of law as to be beyond the ken of the average layperson.

▮ We disagree that this is one of those exceptional cases where Tierney's breach of the standard of care was so obviously the legal cause of

Carbone's injuries that expert testimony was not required. The trial court was correct in characterizing Tierney's conduct as egregious. She demonstrated a fundamental lack of knowledge about the Federal Rules of Civil Procedure and about the remedies available when a case is dismissed in both federal and state court. Nonetheless, it is unclear which egregious conduct, if any, was the legal cause of Carbone's injuries. Accordingly, expert testimony was required to explain whether, if the underlying case had not been dismissed in federal or state court, Carbone would have prevailed in the cause of action against his son. Expert testimony was also required to explain whether Tierney's failure to represent Carbone's interests in Lisa's bankruptcy proceeding actually resulted in harm to Carbone. The facts of this case are thus sufficiently complicated to require expert testimony with respect to causation.

We thus conclude that the trial court erred when it ruled that expert testimony was not required and granted summary judgment in favor of Carbone. Accordingly, we reverse the trial court's ruling with respect to its grant of summary judgment on liability and remand for further proceedings consistent with this opinion.

Tierney next contends that the trial court erred when it denied her motion for judgment notwithstanding the verdict and ruled that Carbone's claims were not barred by his failure to mitigate his damages. We disagree.

■ A party is entitled to judgment notwithstanding the verdict only when the sole reasonable inference that may be drawn from the evidence, which must be viewed in the light most favorable to the nonmoving party, is so overwhelmingly in favor of the moving party that no contrary verdict could stand. *Porter v. City of Manchester*, 151 N.H. 30, 41 (2004). In deciding whether to grant the motion, the trial court cannot weigh the evidence or inquire into the credibility of witnesses. *Id.* If the evidence adduced at trial is conflicting, or if several reasonable inferences may be drawn, the court must deny the motion. *Id.* Our standard of review of a trial court's denial of a motion for judgment notwithstanding the verdict is extremely narrow. *Id.* We will not overturn the trial court's decision absent an unsustainable exercise of discretion. *Id.*; *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

■■ It is settled law that a party seeking damages occasioned by the fault of another must take all reasonable steps to lessen the resultant loss. *Grenier v. Barclay Square Commercial Condo. Owners' Assoc.*, 150 N.H. 111, 119 (2003). The defendant bears the burden of proving that the plaintiff failed to mitigate damages. *Id.*

In April 2000, the Essex County Superior Court notified Tierney that Carbone's complaint had been dismissed. At that time, Tierney did not inquire of the court as to the basis for the dismissal. Carbone brought the instant action against Tierney in September 2000. In the fall of 2001, Tierney learned that the court had dismissed the case because it had misplaced the "Notice of Status Review of the Docket" form that she had returned. Tierney's attorney subsequently informed Carbone of the court's error.

Massachusetts Rule of Civil Procedure 60(a) provides: "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time ... on the motion of any party." Tierney contends that, pursuant to Rule 60(a), Carbone could have moved the Essex County Superior Court to correct its error and reopen his action. Because Carbone failed to do so, Tierney argues that he is precluded from bringing the instant action.

We hold that the trial court did not err when it denied Tierney's motion for judgment notwithstanding the verdict. As set forth above, Tierney bears the burden of proving that Carbone failed to mitigate his damages. She has not satisfied her burden. Tierney failed to present any evidence at trial to establish that moving the Essex County Superior Court to correct its error would have lessened Carbone's resultant loss. Viewing the evidence in the light most favorable to Carbone, we conclude that the trial court did not commit an unsustainable exercise of discretion when it denied Tierney's motion for judgment notwithstanding the verdict.

Tierney next argues that the trial court erred when it sustained the jury's award of $105,000 in damages for Carbone's lost laboratory equipment. Specifically, Tierney argues that the trial court erred in sustaining the jury's award because "[a] review of the evidence offered to support the valuation of lost laboratory equipment demonstrates that [Carbone's] testimony cannot properly establish an appropriate foundation for such an award." As set forth above, we will not overturn the trial court's decision to deny a motion for judgment notwithstanding the verdict absent an unsustainable exercise of discretion. *Porter*, 151 N.H. at 41.

"In tort, one to whom another has tortiously caused harm is entitled to compensatory damages for the harm if, but only if, he establishes by proof the extent of the harm and the amount of money representing adequate compensation *with as much certainty as the nature of the tort and the circumstances permit." Clipper Affiliates v. Checovich*, 138 N.H. 271, 274 (1994) (quotation and brackets omitted). New

Hampshire does not require that damages be calculated with mathematical certainty, and the method used to compute damages need not be more than an approximation. *Phillips v. Verax Corp.*, 138 N.H. 240, 247 (1994).

In the instant case, Carbone testified about the value of his lost laboratory equipment. On direct examination, he explained that in order to calculate his loss, he created a handwritten list of his laboratory equipment from memory. He then used old catalogues to estimate the purchase price of new equipment. In a few instances, he obtained the purchase price of used laboratory equipment and included that information on the list. On cross-examination, Carbone admitted that he had no information about the price he actually paid for his equipment. On appeal, Tierney argues that because there is "nothing scientifically valid" about Carbone's calculations, the evidence presented at trial was insufficient to establish an appropriate foundation for the jury's damage award.

We hold that the trial court did not err in upholding the jury's damage award for Carbone's lost laboratory equipment. Carbone is not, as Tierney suggests, required to use a scientifically valid method to calculate his damages. Instead, Carbone must establish the extent of his loss with as much certainty as the circumstances permit. By creating an inventory of his lost items and estimating the cost of those items, the jury could find that Carbone satisfied his burden. Tierney had the opportunity to cross-examine Carbone about the method he used to calculate his loss. Moreover, the jury was free to accept or reject Carbone's calculations. We thus conclude that the trial court did not commit an unsustainable exercise of discretion when it upheld the jury's award of damages.

Tierney next argues that the trial court erred when it ruled that she had the burden of proving that the judgment in the underlying action would not have been collectible. We disagree.

Collectibility is not a specific element of a legal malpractice claim in New Hampshire. We have never addressed whether the issue of collectibility should be part of a legal malpractice case and, if so, who bears the burden of demonstrating collectibility or noncollectibility. Because these are questions of law, we review the trial court's rulings *de novo*. *See HippoPress v. SMG*, 150 N.H. 304, 308 (2003).

We must first determine whether the collectibility of damages is a proper consideration in a legal malpractice action. As we have previously stated, a plaintiff who alleges that an attorney's negligence caused the loss of a legal action can succeed only by proving that the action would have been successful but for the attorney's misconduct. *McIntire v. Lee*, 149 N.H. 160, 165 (2003).

It is only after the plaintiff proves he would have recovered a judgment in the underlying action that the plaintiff can then proceed with proof that the attorney he engaged to prosecute . . . the underlying action was negligent in the handling of the underlying action and that negligence was the proximate cause of the plaintiff's loss since it prevented the plaintiff from being properly compensated for his loss.

*Kituskie v. Corbman*, 714 A.2d 1027, 1030 (Pa. 1998). The plaintiff's actual loss is thus "measured by the judgment the plaintiff lost in the underlying action." *Id.* It would, however, "be inequitable for the plaintiff to be able to obtain a judgment against the attorney which is greater than the judgment that the plaintiff could have collected from the third party; the plaintiff would be receiving a windfall at the attorney's expense." *Id.* (quotation omitted). We therefore hold that the collectibility of damages in the underlying case is a matter which should be considered in a legal malpractice action.

Given our holding that collectibility of damages in the underlying case is a proper consideration in a legal malpractice action, we must now determine the proper allocation of the burden of proof. A majority of courts that have considered this issue view collectibility as being closely related to proximate cause, a burden which the plaintiff bears as part of his or her *prima facie* case. *See, e.g., Whiteaker v. State*, 382 N.W.2d 112, 115 (Iowa 1986); *Jernigan v. Giard*, 500 N.E.2d 806, 807 (Mass. 1986); *Rorrer v. Cooke*, 329 S.E.2d 355, 369 (N.C. 1985); *Haberer v. Rice*, 511 N.W.2d 279, 285 (S.D. 1994); *DiPalma v. Seldman*, 33 Cal. Rptr. 2d 219, 223 (Ct. App. 1994); *Fernandes v. Barrs*, 641 So. 2d 1371, 1376 (Fla. Dist. Ct. App. 1994); *Lavigne v. Chase, Haskell, Hayes & Kalamon*, 50 P.3d 306, 310-11 (Wash. Ct. App. 2002). Consequently, these courts have concluded that the plaintiff must demonstrate that if the defendant had performed adequately, "the plaintiff would have succeeded on the merits in the underlying case *and* would have succeeded in collecting on the resulting judgment, because only then would [the] plaintiff have proven that the lawyer's malfeasance was the proximate cause of [the] plaintiff's loss." *Smith v. Haden*, 868 F. Supp. 1, 2 (D.D.C. 1994). As the Washington Court of Appeals noted, this approach avoids "awarding the aggrieved more than he or she would have recovered had the attorney not been negligent." *Lavigne*, 50 P.3d at 310.

On the other hand, "a growing minority of jurisdictions holds uncollectibility to be an affirmative defense that must be pleaded and

proved by the negligent attorney." *Id.* These jurisdictions have advanced a number of reasons for rejecting the majority rule.

First, these jurisdictions reject the proposition that the plaintiff should bear the burden of proving collectibility because collectibility is closely related to proximate causation, which is an element of the plaintiff's *prima facie* case. Rather, these jurisdictions contend that although the plaintiff has the burden of proving that he or she would have been successful in the underlying claim, "it does not logically follow that [the plaintiff] must also prove that if [the plaintiff] had obtained a judgment it would have been collectible." *Smith,* 868 F. Supp. at 2.

Second, these jurisdictions maintain: "To require the plaintiff to ... prove collectibility of damages would result in placing an unfair burden on the plaintiff." *Kituskie,* 714 A.2d at 1031. This is particularly true "when a legal malpractice suit is ... brought years after the underlying events and when the delay by the plaintiff in bringing such a suit is because of the defendant-lawyer's failure to act in a timely manner in the first place." *Smith,* 868 F. Supp. at 2.

█ We find the reasoning advanced by the minority of jurisdictions that have considered this issue to be persuasive. Accordingly, we hold that, in a legal malpractice action, noncollectibility of the underlying judgment is an affirmative defense that must be proved by the defendant. *Accord Smith,* 868 F. Supp. at 3; *Power Constructors, Inc. v. Taylor & Hintze,* 960 P.2d 20, 32 (Alaska 1998); *Jourdain v. Dineen,* 527 A.2d 1304, 1306 (Me. 1987); *Kituskie,* 714 A.2d at 1032; *Albee Assoc. v. Orloff & Siegel,* 721 A.2d 750, 756 (N.J. Super. Ct. App. Div.), *cert. denied,* 735 A.2d 572 (N.J. 1999).

In the present case, the trial court ruled that Tierney "would have the burden of proving noncollectibility of any verdict amount that the jury determined [Carbone] was entitled to." For the reasons set forth above, we agree with the trial court's determination and conclude that the trial court did not err when it ruled that Tierney had the burden of proving that the judgment against Carbone's son, Daniel, would not have been collectible.

Tierney next argues that the trial court erred when it denied her motion to reduce the jury verdict "to reflect the amount that [Carbone] would have paid [her] in accordance with the contingency fee agreement." Although we reject the theory that the trial court employed in reaching its conclusion, we agree with its result.

Because the issue of whether a verdict should be reduced to reflect a contingency fee is a question of law, we review the trial court's ruling *de novo. See HippoPress,* 150 N.H. at 308.

To begin, we recognize that whether a plaintiff's legal malpractice recovery should be reduced by the amount of attorney's fees the plaintiff would have paid for the defendant's competent performance is "still [an] unsettled issue." 3 MALLEN & SMITH, *supra* § 20.18, at 161. Indeed, it is a question of first impression for this court.

In addressing the issue of collectibility above, we enunciated the well-established principle that in a legal malpractice action, a plaintiff is entitled to recover damages for his actual loss, which is "measured by the judgment the plaintiff lost in the underlying action." *Kituskie*, 714 A.2d at 1030. This principle is the foundation of our analysis.

Some jurisdictions that have addressed this issue have held that the verdict should be reduced by the amount of the contingency fee because only then would the verdict reflect what the plaintiff would have recovered had the defendant performed competently in the underlying action. *See, e.g., Moores v. Greenberg*, 834 F.2d 1105, 1113 (1st Cir. 1987) (applying Maine law); *McGlone v. Lacey*, 288 F. Supp. 662, 665 (D.S.D. 1968) (applying South Dakota law).

We disagree that reducing the verdict by the amount of the contingency fee puts the plaintiff in the same position that he or she would have been in if the defendant had performed competently in the underlying action. If we were to hold that the verdict must be reduced by the amount of the contingency fee, at the conclusion of the malpractice action, the verdict would be reduced by the amount of the contingency fee, *and* the plaintiff would have to pay his or her new attorney for the services that the new attorney provided in the prosecution of the malpractice action. We think this is an inequitable result.

On the other hand, if the defendant is barred from reducing the verdict to reflect the contingency fee, the plaintiff is in the same position he would have been in if the defendant had performed competently in the underlying action. The plaintiff will still be required to compensate his or her new attorney for the services the attorney provided in pursuit of the malpractice action. The plaintiff, however, will not be penalized for having to employ two attorneys to get the result the plaintiff should have obtained in the original action. Accordingly, we hold that, in a legal malpractice action, the verdict should not be reduced to reflect the amount of a contingency fee agreement. Our holding is consistent with a number of other jurisdictions that have addressed this issue. *Accord Winter v. Brown*, 365 A.2d 381, 386 (D.C. 1976); *Togstad v. Vesely, Otto, Miller & Keefe*, 291 N.W.2d 686, 696 (Minn. 1980); *Saffer v. Willoughby*, 670 A.2d 527, 534 (N.J. 1996); *Campagnola v. Mulholland, Minion & Roe*, 555

N.E.2d 611, 613-14 (N.Y. 1990); *Kane, Kane & Kritzer, Inc. v. Altagen,* 165 Cal. Rptr. 534, 538 (Ct. App. 1980); *McCafferty v. Musat,* 817 P.2d 1039, 1045 (Colo. Ct. App. 1990).

We additionally recognize that, in what appears to be a recent trend, several jurisdictions have applied the doctrine of quantum meruit to determine whether a verdict should be reduced to reflect a negligent attorney's fee. *See, e.g., Foster v. Duggin,* 695 S.W.2d 526, 527 (Tenn. 1985); *Schultheis v. Franke,* 658 N.E.2d 932, 941 (Ind. Ct. App. 1995). Under this approach, the damage award is reduced by the amount the negligent attorney would have been compensated for services that were actually rendered. *Schultheis,* 658 N.E.2d at 941. If we were to adopt this approach, the jury would be required to decide whether the first lawyer provided services that ultimately benefited the plaintiff. If the jury found that the lawyer did provide services that benefited the plaintiff, the jury would then be required to assign a value to those services and reduce the damage award accordingly. We think, as a practical matter, that it would be difficult for a jury to assign a value to the services provided by the first lawyer, particularly where there is considerable disagreement about whether those services benefited the client in any meaningful way. Consequently, we decline to adopt the quantum meruit approach.

In the present case, Carbone hired Tierney to represent him in an action against his son. Carbone agreed to pay Tierney one-third of the amount he recovered in the underlying action. When Carbone later brought suit against Tierney alleging legal malpractice, Tierney argued that the jury verdict should be reduced by one-third to reflect the contingency fee agreement. The trial court rejected Tierney's argument and stated that she "did not provide any services for Mr. Carbone for which she is entitled to a deduction in the malpractice award on a theory of quantum meruit." As a result, the court denied Tierney's motion to reduce the verdict to reflect the contingency fee.

As we explained above, we reject the application of a quantum meruit approach to determine whether the verdict should be reduced by the amount of the contingency fee. Instead, we hold that Tierney is not entitled to have the verdict reduced. Although the trial court employed a different theory than the one that we adopt today, it reached the correct result. We thus conclude that the court did not err in denying Tierney's motion to reduce the jury verdict.

Finally, Carbone argues that the trial court erred in calculating the prejudgment interest that was due on the jury verdict. More specifically, Carbone urges us to adopt a rule under which a plaintiff's damages in a legal malpractice action include interest the plaintiff would have recovered

on the judgment in the underlying action. Although we agree that the damages in a legal malpractice action may include interest in the underlying case, we conclude that Carbone did not properly raise his claim for interest as damages.

In the present case, the jury returned a verdict in Carbone's favor, awarding $69,812.41 in damages for the loss of his residence and laboratory, as well as $105,000 for the loss of his laboratory equipment. The jury was not asked to calculate the amount of interest Carbone would have recovered on the judgment in the underlying action. Nor was any evidence introduced that would have assisted the jury in making this determination. Instead, after the jury returned its verdict, Carbone filed a motion requesting that the trial judge calculate the interest on the judgment in the underlying action and add that interest to the damage award. The trial judge denied the motion, ruling that Carbone "did not plead or prove interest as an element of damages."

In this case, the amount of interest Carbone was entitled to as damages depended upon several unresolved factual issues, including when and where Carbone would have obtained a judgment. Accordingly, the jury was required to determine these factual issues. Because Carbone did not present any evidence relating to interest, the trial court was correct to deny his motion.

Carbone argues that he raised the issue of interest as an element of damages in his motion for summary judgment and that he did not introduce evidence relating to interest at trial because the trial court "ruled in chambers that it was a legal matter to be subsequently determined by the Court." This chambers conference, however, is not part of the record in this case, and therefore we cannot speculate as to what occurred. *See Brown v. Cathay Island, Inc.*, 125 N.H. 112, 115 (1984); *Tiberghein v. B.R. Jones Roofing Co.*, 151 N.H. 391, 394 (2004) (appealing party bears burden of providing record sufficient to decide its issues on appeal). Accordingly, Carbone has failed to demonstrate that the trial court erred by denying his motion.

*Affirmed in part; reversed in part; and remanded.*

DALIANIS and GALWAY, JJ., concurred; NADEAU, J., dissented in part.

NADEAU, J., dissenting in part. I disagree with the majority's conclusion that an expert was necessary in this case to prove proximate cause.

In the performance of her duty as the plaintiff's legal counsel, the defendant: (1) failed to allege in the complaint she filed for him in the United States District Court for the District of New Hampshire an amount

in controversy sufficient to establish subject matter jurisdiction, as a result of which the complaint was dismissed; (2) failed to appeal the dismissal, leading to the dismissal of a second complaint she filed in the district court alleging a sufficient amount, as a result of which a subsequent complaint filed in the United States District Court for the District of Massachusetts was also dismissed; (3) after filing a complaint in the Massachusetts Superior Court, failed to inquire why it was dismissed; (4) having failed to make this inquiry, did not appeal the unjustified dismissal; (5) then, while representing the plaintiff in a bankruptcy proceeding initiated by a party against whom he had been making the dismissed claims, failed to appear at the first meeting of creditors; and (6) failed to oppose the homestead exemption asserted in the bankruptcy, as a result of which the responsible party was discharged.

As far as I am concerned, this defendant's conduct is the equivalent of a surgeon leaving a sponge inside a patient. I agree with the trial judge; the plaintiff did not need an expert to meet his burden of proof under *Furbush v. McKittrick*, 149 N.H. 426 (2003). The circumstances in this case are exceptional; the negligence of the defendant is clear; the consequences to the plaintiff are obvious. "There needs no ghost, my lord, come from the grave to tell us this." W. SHAKESPEARE, HAMLET, PRINCE OF DENMARK, act 1, sc. 5.

The plaintiff is entitled to his jury verdict and I would not subject him to any further judicial process. Respectfully, therefore, I dissent.