670

Strafford
No. 2007-731

ESTATE OF MARCUS R. SICOTTE

v.

LUBIN & MEYER, P.C.

Argued: June 26, 2008
Opinion Issued: September 12, 2008

*Alfred T. Catalfo, III*, of Dover, by brief, and *Mullaney & Richardson, P.A.*, of Rochester (*Stanley J. Mullaney* orally), for the plaintiff.

*Tober Law Offices*, of Portsmouth (*Stephen L. Tober* and *Kelleigh L. Domaingue* on the brief, and *Ms. Domaingue* orally), for the defendant.

HICKS, J. The plaintiff, Estate of Marcus R. Sicotte (the Estate), appeals an order of the Superior Court (*Houran*, J.) dismissing its legal malpractice case against the defendant law firm, Lubin & Meyer, P.C. (L&M). We affirm.

The following facts were recited by the trial court or are supported by the record. On November 12, 1998, Marcus J. Sicotte and Aletia Chase engaged L&M to represent their minor son, Marcus R. Sicotte, in a medical malpractice action arising from Marcus' birth injuries. Marcus' parents signed a fee agreement providing that L&M would be paid a contingent fee of forty percent of the gross amount collected. Appearing next to the forty percent figure in the fee agreement was the handwritten notation: "in any event subject to court approval if necessary." Also appearing were provisions for forty-five and fifty percent contingent fee options that had been crossed out.

The medical malpractice case settled in the amount of $2,250,000. At the hearing on the petition to approve the settlement, *see* SUPER. CT. R. 111, L&M sought allowance of a contingent fee of one-third. *See* RSA 508:4-e

(Supp. 2007); SUPER. CT. R. 111(E)(2). The Court (*Nadeau*, J.) approved both the minor settlement and the contingent fee, and, accordingly, L&M was paid $750,000. Time estimates submitted to the court showed 302 hours spent on the case.

Nearly two years later, the guardian of Marcus' estate moved for the return of attorney's fees, alleging that L&M failed to: (1) inform Marcus' parents that the court ordinarily will not allow an attorney's fee in excess of twenty-five percent of a minor settlement except "upon good cause shown," SUPER. CT. R. 111(E)(2); and (2) give Marcus' parents the option of paying an hourly rate for L&M's services, contrary to RSA 508:4-e, II, which provides:

> No attorney shall enter into such a contingent fee arrangement with his or her client without first advising the client of his or her right and affording the client an opportunity to retain the attorney under an arrangement whereby the attorney would be compensated on the basis of the reasonable value of his or her services.

The Trial Court (*Fauver*, J.) dismissed the motion without prejudice, stating that it was not aware of any law that would permit it to reopen the fee issue where "the Estate, then represented by L&M, did not move to reconsider or appeal [Judge Nadeau's order approving the fee,] as required by the court rules." The court noted that the dismissal was "on a procedural basis only, and [was] not intended to be dispositive of any substantive claims that the Estate may choose to assert in a separate action."

The Estate then brought the instant malpractice action against L&M, alleging that the firm breached its duties:

> to represent the injured child, Marcus R. Sicotte . . . and his Estate with the reasonable care, skill and diligence possessed and exercised by the ordinary attorney in similar circumstances, to carry out its fiduciary responsibility to the injured child and his Estate by following the established rules, statutes and customs governing attorney's fees in the State of New Hampshire, to know the established rules, statutes and customs governing attorney's fees in the State of New Hampshire, and to fully inform and advise its clients of said rules, statutes and customs.

The Estate's writ asserted causes of action in negligence, breach of contract and L&M's failure to train, supervise and properly instruct its agents, directors and employees, and alleged losses including "paying an excess amount of attorney's fees in the medical malpractice matter of the injured child."

The Trial Court (*Fauver*, J.) dismissed the Estate's contract claim. In a structuring conference order entered on July 13, 2006, the Trial Court (*Fitzgerald*, J.) set November 1, 2006, as the deadline for disclosure of the Estate's experts and release of expert witness reports. On December 26, L&M moved to dismiss, alleging that the Estate had failed to disclose its expert or expert report by the deadline. The Estate responded that an expert was not required and it did not intend to use one.

The Trial Court (*Houran*, J.) granted L&M's motion, concluding that expert testimony was necessary on the issue of causation. Upon reconsideration, however, the court vacated its dismissal of the action, ruling that "the interests of justice will be served if the plaintiff is permitted the opportunity to make a late expert disclosure, subject to bearing the costs to the defendant associated with that late disclosure." The court set a new deadline of June 1, 2007, for disclosure of the Estate's expert witness and cautioned that "strict compliance with these orders is essential, and failure to comply with any portion of these orders will result in dismissal."

The Estate filed a motion for, among other things, clarification of the court's order. Noting that it "respectfully . . . continues to maintain that no expert is necessary," the Estate asked the court to clarify, *inter alia*, "what type of expert the Plaintiff is required to produce and what specifically the testimony of such an expert would be expected to encompass." On June 21, 2007, the court denied the motion, referring the Estate to its previous orders.

After an additional extension, the Estate timely disclosed its expert and expert report. L&M again moved to dismiss on the grounds that the expert disclosure was still inadequate. The trial court granted the motion.

On appeal, the Estate argues that the trial court erred in: (1) requiring it to call an expert; (2) not allowing it to use L&M's expert; (3) "refusing to clarify what type of expert testimony" was required; (4) ruling that its disclosure did not comply with the court's order; and (5) failing to follow *Terzis v. Estate of Whalen*, 126 N.H. 88 (1985).

"It is within the sound discretion of the trial court to dismiss the case for failure to comply with the court's discovery order . . . ." *Miller v. Basbas*, 131 N.H. 332, 339 (1988). Accordingly, we review the court's decision for an unsustainable exercise of discretion. *See Whitaker v. L.A. Drew*, 149 N.H. 55, 58 (2003).

We first address the Estate's contention that expert testimony was not required in this case. "Expert testimony is required where the subject presented is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson. Expert testimony is not

required where the subject presented is within the realm of common knowledge and everyday experience." *Boynton v. Figueroa*, 154 N.H. 592, 601 (2006) (citation omitted).

In *Carbone v. Tierney*, 151 N.H. 521 (2004), we explained the role of expert testimony in legal malpractice cases. We first reviewed the elements a plaintiff must prove to establish legal malpractice, namely: "(1) that an attorney-client relationship existed, which placed a duty upon the attorney to exercise reasonable professional care, skill and knowledge in providing legal services to that client; (2) a breach of that duty; and (3) resultant harm legally caused by that breach." *Carbone*, 151 N.H. at 527. We noted that "absent exceptional circumstances, expert testimony is necessary to inform the jury regarding the skill and care ordinarily exercised by lawyers and to prove a breach thereof." *Id.* at 528. We then determined that "in most instances," expert testimony is also needed to prove causation. *Id.* We explained:

> In legal malpractice cases, expert testimony may be essential for the plaintiff to establish causation. The trier of fact must be able to determine what result should have occurred if the lawyer had not been negligent. Unless the causal link is obvious or can be established by other evidence, expert testimony may be essential to prove what the lawyer should have done. We thus hold that expert testimony on proximate cause is required in cases where determination of that issue is not one that lay people would ordinarily be competent to make.

*Id.* (quotations, citations, brackets and ellipsis omitted).

The Estate contends that this case does not require expert testimony because it is "straightforward" and "simple": "It simply involves a factual question, i.e., did the Defendant violate the law?" The Estate further argues that "causation is obvious and implied, i.e., the Defendant violated the law and took legal fees to which it was not entitled."

We disagree. Because a plaintiff in a legal malpractice action must prove "resultant harm legally caused by [the] breach," *id.* at 527, the plaintiff must "provide expert testimony to establish that [the attorney's] breach was the legal cause of [the] injuries," *id.* at 528. The injury claimed here is the reduced amount of the settlement inuring to the Estate due to the excessive fee paid to L&M, as evidenced in Marcus J. Sicotte's affidavit:

> I am asking the Court to order Lubin & Meyer to return the difference between the one-third contingent fee which was taken for legal fees and the 25% contingent fee which is fair, reasonable, standard and customary, plus interest, to the Estate of Marcus R.

Sicotte. In the alternative and at the election of the Estate, I would ask that the time spent on the case by Lubin & Meyer be independently audited for reasonableness, that the legal fee be paid on an hourly basis rather than on a contingent fee basis, and that Lubin & Meyer be ordered to return the difference.

■ Accordingly, to prove its case, the Estate must show either that: (1) if L&M had informed Marcus' parents of the presumptive twenty-five percent fee limit in cases involving minors, they could, and would, have acted such that the trial court would not have approved a fee greater than twenty-five percent; or (2) if L&M had informed Marcus' parents of their right to hire an attorney on an hourly basis, they would have retained alternate counsel who would have obtained a similar settlement or verdict at a lower cost. *See id.* ("The trier of fact must be able to determine what result should have occurred if the lawyer had not been negligent." (quotation and ellipsis omitted)). A determination of: (1) what fee the trial court would likely have awarded in the face of opposition by Marcus' parents; and (2) what results another attorney would likely have obtained and how much it would likely have cost on an hourly basis are "so distinctly related to . . . [the legal profession] as to be beyond the ken of the average layperson." *Boynton*, 154 N.H. at 601. Thus, expert testimony was required.

■ The Estate next contends that even if expert testimony is required, the trial court erred by not allowing it to use L&M's expert witness to provide that testimony. It argues that "[i]t is well-settled law and, in fact, part of the Civil Jury Instructions in New Hampshire, that neither party 'owns' a witness." The trial court, however, did not preclude the Estate from using L&M's expert; indeed, the court "assume[d] without deciding that a plaintiff's disclosure of 'all defendant's witnesses' suffices to notify the defendant that the plaintiff intends to rely on expert testimony presented by the defendant's noticed expert and on one or more of the principals of the defendant professional corporation." Rather, the court concluded that the Estate had "disclosed no expert *by which it can meet its burden on causation.*" (Emphasis added.) The court noted that "counsel for the defendant asserts unequivocally that the testimony of the defendant's expert and principal attorney will be directly counter to the plaintiff's theory of causation" and that nothing in the record indicated to the contrary.

■ The Estate nevertheless argues that while it "may run the risk of the court declaring at trial that the expert testimony is insufficient to carry [its] burden" of proof, "[t]he court cannot dismiss the case prior to trial on the

basis of anticipation and prediction" of what the expert testimony will be. We disagree. The Estate is not entitled to wait until trial to see whether its expert's testimony is sufficient to meet its burden of proof; rather, the Estate was required to disclose, by the court-ordered deadline, "a summary of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." SUPER. CT. R. 35(f)(4). The Estate failed to make such a disclosure and we cannot find that the trial court committed an unsustainable exercise of discretion in consequently dismissing the case. *See Miller*, 131 N.H. at 339.

■ The Estate next contends that the trial court erred by "refusing to clarify what type of expert testimony would be required despite the Plaintiff's request for such clarification." We will uphold the court's ruling on a motion for clarification absent an unsustainable exercise of discretion. *Cf. State v. Barkus*, 152 N.H. 701, 705 (2005) (reviewing decision on motion for clarification and/or reconsideration for unsustainable exercise of discretion). In its denial of the motion, the trial court referred the Estate to our decision in *Carbone*, and to specific portions of two prior orders in which it had explained that expert testimony is required to prove causation because the Estate must show "what result should have occurred if the lawyer had not been negligent." We cannot find that the trial court committed an unsustainable exercise of discretion.

The Estate next contends that the trial court erred in ruling that its eventual disclosure of an expert's report failed to comply with the court's order. In his statement of expert conclusions, the Estate's expert opined:

> [The rules allegedly breached by L&M] are obviously designed to prevent an attorney from attempting to charge a minor client a fee in excess of 25% under circumstances where the client is kept from knowing that all attorneys in the state of New Hampshire are restricted to fees no greater than 25% in the representation of a minor.
>
> As such, in a circumstance where the attorney breaches the standard of care by failing to make this disclosure and by charging a greater fee, the client is deprived the opportunity of seeking representation from an attorney who would have fully complied with the standard of care by making the disclosure and charging a fee in accordance with applicable law.

■ The trial court ruled that this disclosure did not "comply with Superior Court Rule 35(f) and this court's prior orders as to the third part of the plaintiff's burden, to provide expert testimony in support of the requirement that the plaintiff show the resultant harm legally caused by

the breach." We agree. While the statement mentions a lost opportunity to hire other counsel, it says nothing of the probability that other counsel would have obtained similarly favorable results at a lower cost. We find no error.

Finally, the Estate argues that the trial court erred in dismissing the case despite our opinion in *Terzis v. Estate of Whalen*. The Estate contends that in *Terzis*, we "made it clear that cases involving attorney's fees require the highest level of scrutiny" and argues that "[p]ursuant to *Terzis*[,] . . . [L&M] has the burden of proving that their *Contingent Fee Agreement* was fair and reasonable, and that the clients had full knowledge of the facts and of their legal rights."

While we reaffirm the observation in *Terzis* that "[f]ee contracts between attorney and client are a subject of special interest and concern to the courts," *Terzis*, 126 N.H. at 92 (quotations omitted), we note an obvious difference between *Terzis* and this case. In *Terzis*, the attorney brought suit to foreclose a mortgage securing a fee agreement. *Id.* at 89. We noted the potential for overreaching, particularly when the fee agreement was "executed long after the attorney-client relationship has commenced, when the position of trust is well established." *Id.* at 92 (quotations omitted). We therefore adopted the position that "*any attorney seeking to enforce* a contract of this kind has the burden of proving that it is fair and reasonable, and that the client had full knowledge of the facts and of his legal rights with relation thereto." *Id.* (quotation omitted; emphasis added).

This case, however, is not an action by L&M to enforce its fee agreement, but a legal malpractice case brought by the client. Thus, it is the plaintiff client that bears the burden to prove all elements of its claim. *Terzis* does not relieve the Estate of that burden.

For the foregoing reasons, we affirm the trial court's dismissal of this case.

*Affirmed.*

DALIANIS, DUGGAN and GALWAY, JJ., concurred.