Belknap
No. 2008-807

JOSEPH SMITH & a.

v.

HCA HEALTH SERVICES OF NEW HAMPSHIRE, INC. d/b/a
PORTSMOUTH REGIONAL HOSPITAL

Argued: April 16, 2009
Opinion Issued: July 31, 2009

*Fitzgerald & Nichols, P.A.*, of Laconia (*Paul T. Fitzgerald* on the brief and orally), for the plaintiffs.

*Wadleigh, Starr & Peters, P.L.L.C.*, of Manchester (*Todd Hathaway* on the brief and orally), for the defendant.

HICKS, J. The plaintiffs, Joseph Smith and Laurie A. Smith, appeal an order of the Superior Court (*Smukler*, J.) granting summary judgment to the defendant, HCA Health Services of New Hampshire, Inc. d/b/a Portsmouth Regional Hospital, on the plaintiffs' claims for false imprisonment, negligence and loss of consortium. We affirm.

The following facts were either found by the trial court to be undisputed or are supported by the record. For many years, Ms. Smith took a regimen of prescribed pain medication after sustaining injuries in a car accident. She also suffered from unrelated psychological disorders, including depression. In 2004, she began taking more than her prescribed dose of medication. When alerted to this, Ms. Smith's nurse practitioner, Lillian Mandl, suggested that she voluntarily admit herself to a detoxification facility. Mandl assumed that Ms. Smith would be able to leave the facility at any time. Ms. Smith agreed to seek treatment and admitted herself to defendant Portsmouth Regional Hospital on August 19, 2004.

Once admitted, Ms. Smith was placed in a "lockdown" facility. Hospital staff prevented Mr. Smith from visiting her, though she signed a form indicating she did not want to restrict visitors. The hospital also refused to release her when she requested. Mr. Smith and Mandl complained to the hospital, and the hospital released Ms. Smith on August 21, 2004.

The plaintiffs filed suit on February 24, 2007, alleging that the hospital's actions constituted false imprisonment, that the hospital acted negligently, that these actions caused Ms. Smith to suffer emotional distress, resulting in Mr. Smith's loss of consortium claim. The plaintiffs disclosed Mandl as an expert witness on April 18, 2008. In their disclosure, they stated that she would testify as to the above-stated facts, particularly that neither she nor Ms. Smith expected or wanted the defendant to place Ms. Smith in a "lockdown" facility. The disclosure included Mandl's resume, which listed her certifications as a nurse and her employment history.

The defendant deposed Mandl on June 17, 2008. During the deposition, Mandl admitted that she did not consider herself to be an expert on the standard of care for an in-patient detoxification program. She also acknowledged that she could not give expert testimony regarding whether the defendant's actions exacerbated Ms. Smith's psychological symptoms. However, she said she had often referred patients to detoxification facilities, and could judge whether her patients' psychological symptoms intensified.

The defendant moved for summary judgment. In their objection to the motion, the plaintiffs attached an affidavit in which Mandl sought to

"clarify" her deposition testimony. She stated that she is "well qualified to offer opinions about the standards of care . . . for . . . issues . . . such as detoxification"; that in her "expert opinion," Ms. "Smith should not have been held in a 'locked down' unit"; and that "[a]ny factual observations or conclusions that I drew about the effect of the admission to the defendant's facility were made by exercising my specialized knowledge in . . . pain management."

The trial court granted the defendant's motion for summary judgment. The court found that the plaintiffs' claims for negligence and loss of consortium required expert testimony under RSA chapter 507-E, and that even if RSA chapter 507-E did not govern the plaintiffs' claim for false imprisonment, that claim required expert testimony because the standard for discharging patients is beyond the ken of the average layperson. *See Lemay v. Burnett*, 139 N.H. 633, 635 (1995). The court further found that Mandl was not qualified to give such testimony.

On appeal, the plaintiffs contest the conclusion that their claims require expert testimony. They argue that the Patients' Bill of Rights, RSA 151:21 (2005), is sufficient evidence of the applicable standard of care to withstand summary judgment. They also contend that Mandl is qualified to give any necessary expert testimony.

We review the trial court's grant of summary judgment by considering the affidavits and other evidence in the light most favorable to the non-moving party. *Dent v. Exeter Hosp.*, 155 N.H. 787, 791 (2007). If this review does not reveal any genuine issues of material fact, *i.e.*, facts that would affect the outcome of the litigation, and if the moving party is entitled to judgment as a matter of law, we will affirm. *Id.* at 792. We review the trial court's application of law to fact *de novo. Id.*

The plaintiffs' claims arise out of events that occurred during Ms. Smith's treatment in the defendant's detoxification facility. If these claims constitute "actions for medical injury" under RSA 507-E:1 (1997), then RSA 507-E:2 (Supp. 2008) compels the plaintiffs to prove their claims by using expert testimony. Under RSA 507-E:1, I, "any action against a medical care provider, whether based in tort, contract or otherwise, to recover damages on account of medical injury" is an "[a]ction for medical injury." (Quotation omitted.) "Medical injury" is defined as "any adverse, untoward or unde-sired consequences arising out of or sustained in the course of professional services rendered by a medical care provider." RSA 507-E:1, III (quotation omitted). In actions for medical injury, experts must testify: (1) as to the standard of reasonable professional practice; (2) that the medical care provider failed to act in accordance with this standard; and (3) as a proximate result thereof, the plaintiffs suffered injuries which would not otherwise have occurred. RSA 507-E:2, I. Therefore, the plaintiffs would be

unable to meet this statutory burden of proof, and the trial court's grant of summary judgment would be proper, if the plaintiffs' claims are actions for medical injury and if the plaintiffs failed to proffer a suitable expert witness.

When interpreting statutes, we are the final arbiters of legislative intent. *In the Matter of Giacomini & Giacomini*, 151 N.H. 775, 776 (2005). We give the words used in statutes their plain and ordinary meanings, and when the language is clear, we need not go beyond it for further indication of legislative intent. *Id.* at 776-77.

■ In the instant case, the plaintiffs' individual causes of action — false imprisonment, negligence and loss of consortium — all arise out of the same series of events; namely, the defendant's choice to treat Ms. Smith in a "lockdown" detoxification facility. The defendant's treatment of Ms. Smith was indisputably a "professional service[] rendered by a medical care provider," and the plaintiffs allege that they suffered damages "arising out of" the restrictions that this treatment imposed. RSA 507-E:1, III. Thus, the plaintiffs' causes of action are all actions for medical injury under RSA 507-E:1.

■ Policy considerations behind the enactment of RSA chapter 507-E support this conclusion. The legislature enacted this statutory scheme to contain the costs associated with medical malpractice suits by elevating the evidentiary burden on plaintiffs, *see Francoeur v. Piper*, 146 N.H. 525, 528 (2001), and by covering "all conceivable lawsuits against medical care providers," *Lord v. Lovett*, 146 N.H. 232, 237 (2001) (quotation omitted). The plaintiffs' causes of action are plainly within the universe of claims the legislature intended to cover.

Given that the plaintiffs' causes of action are all actions for medical injury, the requirements of RSA 507-E:2 apply and the plaintiffs were required to disclose an expert capable of testifying as to the relevant standard of care, the defendant's breach of that standard and the causal connection between the breach and the plaintiffs' injuries.

■ The plaintiffs argue that expert testimony as to the standard of care is not required because the Patients' Bill of Rights, RSA 151:21, supplies that standard. Specifically, they argue that the applicable standard is articulated in RSA 151:21, VIII, which prevents medical care providers from involuntarily secluding their patients, and RSA 151:21, XII, which requires that providers allow patients to freely communicate with family members. However, RSA 507-E:2 explicitly states that plaintiffs *"must include expert testimony"* to meet their burden of proof. RSA 507-E:2, I (emphasis added). Other forms of evidence as to the standard of care are

therefore insufficient. *See Bissett v. Renna,* 142 N.H. 788, 793-94 (1998) (holding that a Food and Drug Administration publication recommending how and when various drugs should be prescribed is insufficient to establish the standard of care in an action for medical injury resulting from an alleged improper prescription). Furthermore, RSA 151:30 (2005) provides a cause of action for violations of the Patients' Bill of Rights that is "separate from the question of whether there was professional negligence under RSA chapter 507-E." *Carlisle v. Frisbie Mem. Hosp.,* 152 N.H. 762, 777 (2005). RSA 151:21 thus does not modify the strict evidentiary requirements that RSA 507-E:2 applies to actions for medical injury. We note that although the plaintiffs invoke the Patients' Bill of Rights in an attempt to meet their burden of proof, they have not requested relief under RSA 151:30.

In ordering summary judgment for the defendant, the trial court noted that expert testimony was required and concluded that Mandl was unqualified to testify with respect to the standard of care. We will not reverse a trial court's determination that a witness is unqualified to testify as an expert absent an unsustainable exercise of discretion. *See Laro v. Leisure Acres Mobile Home Park Assocs.,* 139 N.H. 545, 548 (1995) (finding no unsustainable exercise of discretion in a trial court's grant of a pre-summary judgment motion *in limine* to exclude expert testimony).

▪ The trial court found that Mandl was not prepared to give expert testimony on the applicable standard of care. In her deposition, Mandl testified explicitly that she did not consider herself an expert on the standard of care for a detoxification facility. Her later affidavit contradicts this statement, asserting that she does believe herself "well qualified" to testify about the standard of care for pain medication and detoxification generally. But nowhere in the plaintiffs' expert disclosure, in Mandl's deposition or in her affidavit does it appear that Mandl is prepared to discuss what constitutes the standard of care for an inpatient detoxification facility. Mandl does say she will testify that, in her opinion, the defendant should have released Ms. Smith from the facility because Ms. Smith strongly desired to leave. This statement, however, is bereft of admissible evidence of the standard of care; *i.e.,* the proper protocols for discharge of patients from inpatient detoxification facilities. Absent further evidence that Mandl was able to testify as to the standard of care, and particularly in light of her original deposition testimony, we cannot hold that the trial court unsustainably exercised its discretion in finding that she was unable to give required expert testimony.

▪ Mandl was similarly unqualified to testify on causation. *See Handley v. Town of Hooksett,* 147 N.H. 184, 189-90 (2001) ("This court will sustain

the decision of the trial court if there are valid alternative grounds to support it."). In her deposition, Mandl testified that although she considered herself able to judge whether Ms. Smith's symptoms of mental illness worsened after her admission to the defendant's facility, she did not consider herself an expert on whether the admission was the *cause* of this change. In her affidavit, Mandl states that "any factual observations or conclusions that I drew about the effect of the admission to the defendant's facility were made by exercising my specialized knowledge in . . . pain management." However, the only such observation or conclusion in her affidavit or her deposition testimony is that Ms. Smith's symptoms deteriorated following her admission. Mandl nowhere represents that she is qualified to give testimony on the causes of psychological symptoms or has made any conclusions as to the cause of Ms. Smith's symptoms. As a result, Mandl is unqualified to testify as to this element of the plaintiffs' case.

■ The plaintiffs' claims are actions for medical injury that require expert testimony, and the trial court properly exercised its discretion in ruling that the plaintiffs did not proffer an expert qualified to testify as to all of the required elements of the plaintiffs' case. Therefore, the plaintiffs would be unable to meet their burden of proof at trial, and the defendant is entitled to judgment as a matter of law.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.