Hillsborough-southern judicial district
No. 2009-232

WESLEY BECKLES & a.

v.

JENNIFER E. MADDEN, M.D. & a.

Argued: November 17, 2009
Opinion Issued: April 9, 2010

*Lubin & Meyer, P.C.,* of Boston, Massachusetts (*Suzanne C.M. McDonough* on the brief, and *Benjamin R. Novotny* orally), for the plaintiffs.

*Wadleigh, Starr & Peters, PLLC,* of Manchester (*Todd Hathaway* on the brief and orally), for defendants Jennifer E. Madden, M.D., Eugene A. Lesser, D.O., Foundation Medical Partners, and Foundation Neurology.

*Rath, Young and Pignatelli, PC,* of Nashua (*Kenneth C. Bartholomew* on the brief and orally), for defendant Nagbhushan S. Rao, M.D.

BRODERICK, C.J. The plaintiffs, Wesley and Maggie Beckles, appeal a decision of the Superior Court (*Barry,* J.) granting summary judgment on their medical malpractice claims in favor of the defendants, Jennifer E. Madden, M.D., Eugene A. Lesser, D.O., Foundation Medical Partners, Foundation Neurology, and Nagbhushan S. Rao, M.D. We reverse and remand.

## I

We recite the undisputed facts provided in the record and in the trial court's order. Plaintiff Wesley Beckles sustained a neck injury at work. In March 2003, Barbara O'Dea, M.D., not a named party to this lawsuit, examined Mr. Beckles and noted symptoms that were not necessarily consistent with his work injury. In particular, the medical records indicate that he suffered tightness and tingling in different parts of his body, numbness, a general feeling of muscle weakness, weakness to the left side of his body, shock-like sensations, and difficulties with balance, gait and memory recall. Her notes state that: "Gait is abnormal today with some questionable weakness on the left side, at times with a mild limp, and at one point [he] appeared to fall a bit against the wall to get back into upright posture. He had a similar difficulty with attempting to squat, started to fall backwards a bit, and I had to help support the patient with this." She also documented that he had "poor recollection of sequence of events or dates." Dr. O'Dea's recommendations included evaluating whether Mr. Beckles had "metabolic difficulty such as [vitamin] B12 deficiency causing pernicious anemia with secondary neurological symptoms to this." She referred him to a neurologist and his primary care physician for further diagnosis and treatment.

On March 25, Mr. Beckles again met with Dr. O'Dea for a follow-up appointment, and her progress notes indicate that he had recently missed

two scheduled appointments with a neurologist because he could not find "the right location." She also noted his "continued difficulties with the balance and sense of wasting in his lower extremities," and documented a recent episode in which he lost his balance and fell at work. The doctor's notes reflect that "[t]he patient still ha[d] difficulty with gait," continued to have "balance difficulties, at times [came] close to touching the wall while trying to walk," displayed "a marked difficulty with attempting to do even a partial squat," and "appear[ed] to have some swaying tendency."

The following day, Mr. Beckles was examined by Dr. Rao, a neurologist. Dr. Rao was on temporary assignment at Foundation Neurology, and neurologist Dr. Lesser co-signed Dr. Rao's notes. Dr. Rao's notes document that Mr. Beckles continued to experience difficulty with his gait and balance. In his description of Mr. Beckles' condition, he noted: "He walks almost as if he is spastic and has ataxia. On Romberg testing he almost fell to the left. With his feet together he has some difficulty balancing himself." When opining on Mr. Beckles' ability to work, Dr. Rao noted that "he should not be lifting heavy things and should not be doing complicated maneuvers [and he] requires close supervision to prevent any falls." After noting several possible causes, Dr. Rao ordered various testing including a blood test to check his "[vitamin] B12 and folate levels."

Two days later, on March 28, Mr. Beckles was examined by his primary care physician, Dr. Madden. Dr. Madden documented Mr. Beckles' problems with numbness, coordination and gait, and concluded that his symptoms were "associated with probable depression." The doctor also noted that "I went through his entire history of this event and examined him and he never mentioned to me that he had been seen by Dr. Rao of neurology (Dr. Lesser's partner), just this week." Dr. Madden prescribed medication, planned to wait for "neurology to complete their workup," and ordered a complete blood count.

The following weekend, on April 6, Mr. Beckles fell at home and fractured a bone in his right leg. The circumstances surrounding the fall are unclear. A medical progress note dated April 10 stated: "At home, . . . he became unsteady and twisted his right ankle after a fall on 04/06/03." Another medical note documented: "He also tells me that . . . he fell fracturing his right foot. He could not tell me the details." However, one medical note stated: "In retrospect, the patient probably had a rather severe B12 deficiency contributing to gait disturbance which subsequently led to his fall in April." Dr. Rao examined Mr. Beckles at the end of April for a neurology follow-up, and his notes reported: "I would like him to have physical therapy especially for gait training as he had difficulty walking and was ataxic (causing his fall resulting in a fracture). I hope the gait training will improve his ability to walk."

Subsequently, on June 7, Mr. Beckles was admitted to the emergency department at Southern New Hampshire Medical Center where it was discovered that blood clots had developed in one of his legs and traveled to his lungs. He received thrombolytic therapy in order to dissolve the blood clots, which ultimately caused him to suffer a brain hemorrhage. He also was diagnosed and treated for vitamin B-12 deficiency, for which he will receive injections over the course of his lifetime. Due to the brain hemorrhage, Mr. Beckles suffered permanent brain damage, causing numerous disabilities. He will require 24-hour care for the rest of his life. He is in his mid-60s with a normal life expectancy and resides in a nursing home.

The plaintiffs filed suit against the defendants, alleging that they were negligent in the medical care they provided to Mr. Beckles. Specifically, they allege that the defendants failed to diagnose Mr. Beckles' apparent vitamin B-12 deficiency that was causing gait and balance problems, and also failed to timely initiate precautionary measures to prevent him from falling. According to the plaintiffs, Mr. Beckles' fall and broken ankle were a direct result of the defendants' negligence, and this injury ultimately led to his brain hemorrhage and other injuries.

The plaintiffs' expert disclosure identified Dr. Barry Singer, a hematologist from Pennsylvania, and Dr. Kenneth Fischer, a neurologist from Florida. Dr. Fischer was deposed on February 15, 2008, and Dr. Singer was deposed about two months later. Subsequently, the defendants moved for summary judgment, contending that the plaintiffs' medical experts were unable to provide sufficient testimony to establish the necessary causal connection between their alleged negligent care and Mr. Beckles' fall. Over the plaintiffs' objection, the trial court granted the motion. The plaintiffs' motion for reconsideration was denied. This appeal followed.

II

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits filed, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RSA 491:8-a, III (1997). "[T]he adverse party may not rest upon mere allegations or denials of his pleadings, but his response, by affidavits or by reference to depositions, answers to interrogatories, or admissions, must set forth specific facts showing that there is a genuine issue for trial." RSA 491:8-a, IV (1997). We review the trial court's grant of summary judgment by considering the affidavits and other evidence, and the inferences properly drawn from them, in the light most favorable to the non-moving party. *Smith v. HCA Health Servs. of N.H.*, 159 N.H. 158, 160

(2009). "If this review does not reveal any genuine issues of material fact, *i.e.*, facts that would affect the outcome of the litigation, and if the moving party is entitled to judgment as a matter of law, we will affirm." *Id.* We review the trial court's application of law to the facts *de novo. Id.*

The trial court concluded that the opinions of the plaintiffs' two medical experts were insufficient to warrant a reasonable juror's conclusion that the defendants' alleged negligence caused Mr. Beckles to fall. It outlined the plaintiffs' burden in demonstrating causation as follows:

> Mr. Beckles must prove that the defendants' failure to diagnose the B-12 deficiency and provide physical therapy or an assistive device, such as a cane, was a substantial factor in bringing about his fall. This means that he must demonstrate that, had the defendants properly treated Mr. Beckles, he would have received an assistive device or physical therapy prior to his fall on April 6 and that the assistive device and/or the physical therapy would have prevented his fall.

The trial court concluded that the plaintiffs' medical experts could not testify with a sufficient level of probability that Mr. Beckles would have received physical therapy or an assistive device prior to his fall, or that even if he had received therapy and an assistive device, the fall would have been avoided. The trial court ruled that the medical experts gave conclusory statements or bald conclusions regarding causation which are insufficient to demonstrate that any negligence on the part of the defendants caused Mr. Beckles' fall.

On appeal, the plaintiffs argue that the trial court erred in granting summary judgment because the record reveals a genuine issue of material fact on causation. They contend that the medical experts opined with reasonable medical certainty that had the defendants immediately provided preventative care to Mr. Beckles, it is more likely than not that he would not have fallen. According to the plaintiffs, the various factual assumptions underlying the expert medical opinions on causation relate to the weight and credibility to be afforded to the opinions and constitute matters that are within the province of the fact-finder, not the trial court.

Defendants Dr. Madden, Dr. Lesser, Foundation Medical Partners and Foundation Neurology advance three arguments in support of the trial court's order. First, they contend that the plaintiffs' expert testimony was insufficient to establish causation. Second, they argue that it failed to meet the threshold requirement of reliability under RSA 516:29-a. Third, they contend that even if it had sufficient factual foundation and was reliable, the expert testimony failed to establish causation as a matter of law. Dr. Rao, the remaining defendant, contends that the expert testimony was insuffi-

cient to establish causation because it was speculative, did not satisfy the necessary standard of reasonable probability, and lacked any factual foundation.

## III

A negligence action based upon a claim of medical malpractice is governed by RSA chapter 507-E (1997 & Supp. 2009). RSA 507-E:2 provides in part:

> I. In any action for medical injury, the plaintiff shall have the burden of proving by affirmative evidence which must include expert testimony of a competent witness or witnesses:
>
> (a) The standard of reasonable professional practice in the medical care provider's profession or specialty thereof, if any, at the time the medical care in question was rendered; and
>
> (b) That the medical care provider failed to act in accordance with such standard; and
>
> (c) That as a proximate result thereof, the injured person suffered injuries which would not otherwise have occurred.

Thus, the plaintiffs must produce sufficient evidence that a doctor's negligence proximately caused the patient's injury. *See Bronson v. The Hitchcock Clinic*, 140 N.H. 798, 801 (1996). Here, the defendants' summary judgment motion exclusively focused upon the causal connection between their alleged negligence and Mr. Beckles' fall. Thus, our review is likewise limited.

The concept of proximate cause includes both the cause-in-fact and the legal cause for the injury. *Id.* Conduct is cause-in-fact if the injury, in this case the fall, would not have occurred without that conduct. *Id.* The evidence to support this causal link must be "sufficient to warrant a reasonable juror's conclusion that the causal link between the negligence and the injury probably existed." *Id.*; *see also Goudreault v. Kleeman*, 158 N.H. 236, 246 (2009); RSA 507-E:2, I(c). This standard is satisfied if the evidence shows "with reasonable probability, not mathematical certainty, that but for the defendant's negligence, the harm would not have occurred." *Bronson*, 140 N.H. at 802-03. "[L]egal cause requires a plaintiff to establish that the negligent conduct was a substantial factor in bringing about the harm." *Estate of Joshua T. v. State*, 150 N.H. 405, 408 (2003). "Although the negligent conduct need not be the sole cause of the injury, to establish

proximate cause a plaintiff must prove that the defendant's conduct caused or contributed to cause the harm." *Id.*

In medical malpractice cases, expert testimony is required to establish proximate cause. *See id.* This requirement "serves to preclude the jury from engaging in idle speculation." *Id.* (quotation omitted). "A medical expert's competent opinion that the defendant's negligence 'probably caused' the harm establishes the quantum of expert testimony necessary." *Goudreault,* 158 N.H. at 246. Medical experts need not use specific words or phrases that mirror the statutory standard in order to furnish sufficient evidence to support causation. *See Bronson,* 140 N.H. at 804. Ultimately, resolution of the question of proximate cause is generally for the trier of fact. *Estate of Joshua T.,* 150 N.H. at 408.

The dispute before us centers upon a somewhat narrow time frame, starting with the doctor's appointments on March 26 and March 28 and concluding at the time of Mr. Beckles' fall on April 6. It is our task to review whether the summary judgment record, including the expert testimony, viewed in the light most favorable to the plaintiffs as the non-moving parties, as well as all reasonable inferences drawn therefrom, *see Everitt v. Gen. Elec. Co.,* 159 N.H. 232, 234 (2009), would be sufficient to warrant a reasonable juror's conclusion that the causal link between the defendants' alleged negligence and Mr. Beckles' fall probably existed, *see Bronson,* 140 N.H. at 801.

As an initial matter, we note that defendants Dr. Madden, Dr. Lesser, Foundation Medical Partners and Foundation Neurology contest whether an opinion letter authored by one plaintiff expert, Dr. Fischer, should be considered part of the summary judgment record, arguing that "[r]eliance on the unsworn disclosure is inappropriate." *See Manchenton v. Auto Leasing Corp.,* 135 N.H. 298, 301-02 (1992) (deposition sufficient to satisfy affidavit requirement under RSA 491:8-a, II). We decline to consider this argument, however, because the defendants acknowledged at oral argument that the expert's letter was part of the summary judgment record before the trial court and they did not move to strike it or otherwise seek to have it excluded. Indeed, defense counsel had the same opinion letter marked as an exhibit during Dr. Fischer's deposition. Accordingly, we consider the expert's opinion letter part of the summary judgment record.

We also reject defendant Rao's argument that we should apply a clearly erroneous or unsustainable exercise of discretion standard in reviewing the trial court's summary judgment ruling regarding the sufficiency of the expert medical testimony. Rather, our task is to review *de novo* the summary judgment record in the light most favorable to the plaintiffs to determine whether genuine issues of material fact exist and

whether the moving party is entitled to judgment as a matter of law. *See Smith*, 159 N.H. at 160. In conducting this review, we are mindful that the question of proximate causation is generally a matter for the trier of fact, *see Estate of Joshua T.*, 150 N.H. at 408, and that experts are permitted to opine on hypothetical circumstances that are supported by evidence and resemble the case at bar, *see Canney v. Travelers Insurance Co.*, 110 N.H. 304, 305 (1970).

We turn now to review the summary judgment record before us. The plaintiffs' experts, either collectively or individually, provided testimony on the following points. They opined that acting in accord with the proper medical standard of care, the defendants should have followed up on the blood testing ordered by Dr. Rao to ascertain Mr. Beckles' vitamin B-12 level and discovered the deficiency, then counseled him and his wife on safety issues related to his unstable gait and balance difficulties and ordered physical therapy. They testified that Mr. Beckles would have engaged in a minimum of one physical therapy session before his fall at which he would have received instruction and training on how to safely walk and safely navigate, including standing up, sitting, and lying down. According to the plaintiffs' experts, Mr. Beckles should have received an assistive device of some type, such as a cane or walker, from either the defendant doctors or a physical therapist. Additionally, they opined that given Mr. Beckles' confused mental status and his history of missing doctor appointments and problems with memory, proper medical care would have required that Mrs. Beckles be included in the management of her husband's care to guard against falls, and to supervise him on matters involving his physical instability.

With respect to physical therapy training, Dr. Fischer testified that he has seen physical therapy sessions with patients many times. He described a typical training session as including "safety first," in which the therapist evaluates the patient's gait and potential problems for safety, and gives the patient a proper assistive device "right at the first visit." He also testified that the training includes instructing the patient on how to use the device, as well as how to stand up, sit, and lie down. Dr. Singer testified that at the first session, a physical therapist would have given Mr. Beckles whatever was necessary to provide for his safety, stating: "I mean, if the man couldn't walk they probably would have told him to stay in bed, if he couldn't get around successfully."

Although the time frame between the alleged negligence and Mr. Beckles' fall was relatively short, Dr. Singer's deposition testimony suggests he believed that the situation was urgent and should have prompted immediate attention from the doctors. Moreover, both experts opined that proper precautionary care was warranted, even without detecting the

vitamin B-12 deficiency, given Mr. Beckles' history of gait and balance problems. Finally, they opined, either directly or inferentially, that proper precautionary measures more likely than not would have prevented Mr. Beckles from falling, and, as a direct result of the defendants' failure to implement proper precautionary measures to protect Mr. Beckles, including providing him with an assistive device and training him how to use it properly in different situations, he fell and fractured his ankle.

Defendant Rao argues that the plaintiffs' expert opinions were insufficient to establish causation because they opined, without any factual foundation, that Mrs. Beckles' involvement would have prevented her husband's fall and that Mr. Beckles lacked mental capacity to handle his own medical affairs. In her affidavit, however, Mrs. Beckles averred that, "Had any of the Doctors recommended gait training or physical therapy to help, I would have ensured that he received it immediately." Further, the medical records raise a genuine factual dispute regarding his mental confusion. Dr. O'Dea remarked that he had "poor recollection of sequence of events or dates," and he had recently missed two neurology appointments because he could not find the location of the doctor's office. Dr. Madden's notes document that Mr. Beckles failed to tell Dr. Madden that Mr. Beckles had just undergone a neurology exam with Dr. Rao earlier that week.

Dr. Rao also argues that the plaintiffs' expert testimony was particularly speculative on whether his purported negligence proximately caused Mr. Beckles' fall. He contends that the results of the blood tests he ordered on March 26 were returned mistakenly to the wrong doctor, and "[c]ommon sense dictates that Dr. Rao would not [have] follow[ed] up . . . and notice[d] they were missing for at least several days," leaving insufficient time for him to take measures to provide physical therapy and prevent the fall. The defendant, however, fails to account for the expert testimony opining that: (1) the situation was urgent and required immediate attention; and (2) immediate precautionary care was required even absent detecting the vitamin B-12 deficiency.

The trial court concluded that the experts' opinions were insufficient to demonstrate causation because they collectively or individually speculated about: (1) how long it would take to have blood drawn for a vitamin B-12 test; (2) whether physical therapy would have occurred prior to the fall; (3) whether Mr. Beckles would have been available for any physical therapy or blood drawing appointments; (4) whether Mr. Beckles would have received a cane or another assistive device from the doctors or from the physical therapist; and (5) whether proper precautionary instruction and an assistive device would have prevented the fall. However, the deposition testimony and Dr. Fischer's opinion letter viewed as a whole reveal that the

experts opined that had the defendants rendered proper medical care, the normal and expected time line and procedure would likely have resulted in (1) securing blood test results by the end of the week that Mr. Beckles was seen by the doctors, or early the following week, (2) communicating the diagnosis and safety counseling to Mr. Beckles and his wife almost immediately upon securing the test results, and (3) beginning physical therapy training before Mr. Beckles fell. Moreover, they opined that even without the vitamin B-12 deficiency, the same precautionary measures were required given Mr. Beckles' physical and mental symptoms.

Both of the plaintiffs' experts acknowledged that timely preventative care depended, in part, upon Mr. Beckles' cooperation in meeting with the physicians, in engaging in physical therapy, and in complying with safety instructions. They also acknowledged that timely preventative care partly depended upon timely blood testing, follow-up appointments, and appropriate scheduling of physical therapy. Whether or not these underlying events were more likely than not to have occurred given the particular individuals involved and the circumstances of the case are issues of fact for the jury to resolve. *Cf. id.* (facts assumed in hypothetical scenario opined upon by an expert must be supported by the evidence and resemble the case before the jury). The defendants correctly assert that the plaintiffs must demonstrate each necessary step in the causal connection between the defendants' alleged negligence and Mr. Beckles' fall in order to recover on their negligence claims. In this case, however, several factual issues relevant to causation can be established through lay testimony rather than expert testimony, such as the likelihood that Mr. Beckles would have complied with physical therapy training and that Mrs. Beckles would have supervised her husband.

■ The trial court noted that "there is no concrete evidence regarding the factual circumstances surrounding Mr. Beckles's fall," and defendant Rao argues that a causal link cannot be established because "there is so little information as to how the fall actually occurred and the reasons for his falling." However, viewing the record in the light most favorable to the plaintiffs, a genuine issue of material fact exists regarding the circumstances surrounding the fall and their relationship to the purported negligence in this case. For example, one medical progress note states: "At home, he states he became unsteady and twisted his right ankle after a fall on 04/06/03." Yet, another medical note authored by Dr. Rao documents that: "He also tells me that . . . he fell fracturing his right foot. He could not tell me the details." Dr. Singer's deposition testimony suggests that he fell while trying to get out of bed, and defense counsel stated that Mrs. Beckles had "testified [during deposition] that he fell that week when he was trying

to get out of bed." Two medical notes appear to directly attribute Mr. Beckles' fall to his unstable walking gait. Specifically, Dr. Rao's April 22 notes state that: "I would like him to have physical therapy especially for gait training as he had difficulty walking and was ataxic (causing his fall resulting in a fracture). I hope the gait training will improve his ability to walk." Additionally, a transfer summary note states that "[i]n retrospect, the patient probably had a rather severe B12 deficiency contributing to gait disturbance which subsequently led to his fall in April." We conclude that the circumstances surrounding the fall as relevant to the proximate cause element involve issues of fact that are properly left to the jury to resolve.

The trial court also was troubled by some of the indecisive phraseology used by the experts at different times during their depositions. On several occasions when faced with different scenarios offered by defense counsel, the experts qualified their answers, stating that they would be "speculating." At one point, Dr. Singer testified that he "can't say one way or the other" whether gait training "would probably have prevented *this* fall in *this* particular case." (Emphases added.) Further, at times when pressed on the likely occurrence of certain foundational facts, (*e.g.*, whether the physical therapy training would have occurred in a timely manner), the doctors responded indecisively.

However, the experts also gave definitive answers. For example, when Dr. Fischer was asked the basis for stating that Mr. Beckles would have received physical therapy, gait training and an assistive device before his fall, he answered, "It doesn't take five days. It may take a day or so to get physical therapy evaluation, but not five days." Moreover, summary judgment should not be applied to foreclose the plaintiffs from submitting evidence on the factual assumptions underlying the experts' opinions, such as whether Mr. Beckles would have promptly attended a follow-up appointment given his apparently poor memory. The existence of the ultimate facts upon which the experts' opinions rest should be left to the jury in this case.

In addition, when the deposition testimony is read in the light most favorable to the plaintiffs, it appears that the plaintiffs' experts did not vacillate as to what they ultimately opined likely happened in this case. For example, Dr. Singer stated:

> My opinion is that diagnosing the Vitamin B-12 deficiency would have allowed better precautionary care of the patient such as the fall would have been prevented. . . . [P]reventative as far as preventing the fall in my opinion could have been instituted.

Dr. Fischer stated: "But the diagnosis being made by Dr. Rao correctly and timely, and doing the other aspect of that, of providing the physical therapy, gait training and counseling, more likely than not would have prevented the

fall." When asked whether proper physical therapy training would have prevented Mr. Beckles from falling, Dr. Fischer stated:

> I can't say with certainty, but I think with the medical probability. Again, looking at Dr. Rao's report on [April] 22nd, he fell because he was clumsy. He was unsupervised. He didn't have an assistive device. That all would have been prevented had he had therapy, had some training and had an assistive device. So the answer is more likely than not [the fall] would have been prevented.

Moreover, in his opinion letter, Dr. Fischer clearly attributed Mr. Beckles' fall to the defendants' alleged substandard medical care.

■ We disagree with the characterization by the trial court and the defendants that the expert opinions consist of bald conclusions and conclusory statements. Rather, the plaintiffs' experts explained the normal and expected time line and the procedures for providing proper precautionary measures to ensure Mr. Beckles' safety, and opined that had these procedures been followed, Mr. Beckles probably would not have fallen. *Compare Randall v. Benton*, 147 N.H. 786, 790 (2002) (while expert testified that the suicide was a foreseeable event and that defendant's deviations caused or substantially contributed to the suicide, the plaintiff offered no specific lay or expert testimony to demonstrate that if the defendant had taken the additional steps recommended by the plaintiff's expert, the deceased would not have otherwise committed suicide), *with Hodgdon v. Frisbie Mem. Hosp.*, 147 N.H. 286, 290-91 (2001) (causation sufficiently shown by expert testimony that medical records show that "chances are" at least 50 percent of plaintiff's optic nerve was still functioning while at the emergency room, and that plaintiff ultimately suffered injury that she otherwise would not have suffered had physician properly diagnosed and immediately treated her condition).

We conclude that the summary judgment record, including the expert testimony and opinion letter, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the plaintiffs, would be sufficient for a reasonable juror to conclude that from the time Mr. Beckles was seen by the defendants on March 26 and on March 28, there was a reasonable probability that had the defendants provided proper precautionary care, Mr. Beckles would not have fallen on April 6. *Cf. St. Pierre v. Elgert*, 145 N.H. 620, 624 (2000) (expert testimony sufficient to withstand motion for directed verdict where he testified that there was a "reasonable medical probability" that the plaintiff's infection in her uterus was "instigated and started by" the defendant's medical failure). The particular factual uncertainties underlying the experts' testimony did not render their opinions insufficient such that causation could be resolved as

a matter of law in this case. Accordingly, we reverse the trial court's ruling granting summary judgment to the defendants on the issue of causation.

## IV

Defendants Dr. Lesser, Dr. Madden, Foundation Medical Partners and Foundation Neurology argue that the expert medical opinions in this case were not reliable and were merely "speculation dressed-up as expert analysis," lacking any "scientific or other methodology." Relying upon RSA 516:29-a, they argue that the trial court properly discounted such evidence because the experts' testimony would not be admissible at trial. The trial court, however, did not address the reliability of the expert testimony under RSA 516:29-a (2007), see Goudreault, 158 N.H. at 246-47, and, therefore, that issue is not properly before us.

Finally, according to defendants Dr. Lesser, Dr. Madden, Foundation Medical Partners and Foundation Neurology, the trial court concluded that the facts of this case do not establish causation as a matter of law even if the plaintiffs' expert testimony is sufficient and reliable. They argue that the chain of events starting from the defendants' alleged failure to diagnose the vitamin B-12 deficiency leading to Mr. Beckles' brain hemorrhage involve "far too many speculative leaps of faith" and "[t]he individual risk of each [precipitating event leading to the final result] is incredibly small" such that the risk of each event happening in a single case "is just too unforeseeable to amount to legal causation under New Hampshire law." Because the defendants/ misconstrue the trial court's ruling, we decline to reach the merits of their argument.

The trial court, after concluding that "Dr. Singer's testimony is insufficient to demonstrate causation," ruled that: "Additionally, the Court notes that, even after considering the testimonies of both doctors, there are insufficient facts to demonstrate a causal link between any negligence of the defendants and Mr. Beckles's fall." (Emphases added.) The trial court's ruling simply summarizes its conclusion regarding the expert testimony of both Dr. Singer and Dr. Fischer in relation to Mr. Beckles' fall. It did not render a ruling that, even if the expert testimony was sufficient as to causation of the fall, it was insufficient to establish causation of all the alleged injuries, including the brain hemorrhage and resulting disabilities.

*Reversed and remanded.*

DALIANIS, DUGGAN, HICKS and CONBOY, JJ., concurred.