**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2016-0246, <u>Lionel A. Perreault & a. v. Douglas M. Goumas, M.D. & a.</u>, the court on April 7, 2017, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The plaintiffs, Lionel A. Perreault (patient) and Constance Perreault, appeal an order of the Superior Court (<u>Ignatius</u>, J.) directing a verdict in their medical malpractice action against defendants, Douglas M. Goumas, M.D. and Four Seasons Orthopaedic Center, PA d/b/a New Hampshire Orthopaedic Center, following the testimony of the plaintiffs' only expert witness. They contend that the trial court erred by: (1) finding the evidence insufficient to establish medical causation, <u>see</u> RSA 507-E:2, I (2010); and (2) not allowing them to recall their expert witness.

We first address whether the evidence was sufficient to establish medical causation. At the outset, the plaintiffs argue that, because the defendants moved for a directed verdict after the plaintiffs' only expert witness had completed his testimony, but before the plaintiffs had rested, the motion "cannot be . . . properly characterized as [a motion for a] directed verdict." However, regardless of the form that the motion took, we have long recognized that a trial court may dismiss a case when it is clear that the plaintiff will not be in a position to introduce expert testimony necessary to establish a required element of the plaintiff's case. <u>See, e.g.</u>, <u>Estate of Sicotte v. Lubin & Meyer</u>, 157 N.H. 670, 676 (2008) (upholding trial court's discretionary decision to dismiss legal malpractice action when plaintiff failed to disclose prior to discovery deadline summary of expert testimony establishing causation).

Here, this is precisely the argument that the defendants made in moving for a directed verdict following the testimony of the plaintiffs' only disclosed expert witness. Accordingly, if the defendants were correct that the plaintiffs, based upon the expert's testimony, would not have been able to prove causation as a matter of law, the trial court had discretion to dismiss the case at that point, regardless of whether the plaintiffs had yet rested. <u>See</u> <u>id</u>.

A motion for directed verdict should be granted only when the sole reasonable inference that may be drawn from the evidence, which must be viewed in the light most favorable to the nonmoving party, is so overwhelmingly in favor of the moving party that no contrary verdict could stand. <u>St. Pierre v.</u>

Elgert, 145 N.H. 620, 621 (2000). The trial court cannot weigh the evidence or judge the credibility of the witnesses, and, if the evidence is conflicting or several reasonable inferences may be drawn, the motion for a directed verdict should be denied. Id. We will uphold the trial court's decision on a motion for a directed verdict when sufficient evidence in the record supports the ruling. Carignan v. New Hampshire Int'l Speedway, 151 N.H. 409, 413 (2004).

In medical malpractice cases, expert testimony is required to establish proximate cause. RSA 507-E:2, I(c); Beckles v. Madden, 160 N.H. 118, 125 (2010). This requirement serves to preclude the jury from engaging in idle speculation. Beckles, 160 N.H. at 125. Medical experts need not use specific words or phrases that mirror the statutory standard in order to furnish sufficient evidence to support causation. Id. A medical expert's competent opinion that the defendant's negligence "probably caused" the harm establishes the quantum of expert testimony necessary. Id. Resolution of the question of proximate cause is generally for the trier of fact. Id.

In this case, the plaintiffs did not contend before the trial court, and do not contend upon appeal, that their expert witness testified that the defendant doctor caused the patient's symptoms. Instead, they argue that the jury could "rely on the inferences drawn from an expert's testimony." Cf. St. Pierre, 145 N.H. at 625 (stating sufficient testimony to allow jury to find or infer that defendant's negligence caused plaintiff's infection).

However, they do not point to any testimony by the expert that would support such an inference. Instead, they point to his testimony that the defendant breached a standard of care. In fact, the expert testified that there were other potential causes for the patient's continuing pain after the defendant replaced his knee, including stiffness, scarring, inflammation, and obesity. The expert further testified that non-negligent knee replacements do not necessarily relieve all of a patient's pain and stiffness.

To the extent that the plaintiffs argue that there was no "evidence in support of [the defendants'] contention" that factors other than the defendant doctor's post-operative care may have caused the patient's symptoms and that the patient's "nearly miraculous recover[y] after the corrective surgery" supports an inference of causation, the plaintiffs carried the burden to prove causation by "affirmative evidence which must include expert testimony." RSA 507-E:2, I. To the extent that the plaintiffs argue that, assuming other factors contributed to the patient's symptoms, this does "not absolve the defendant for his failure," the expert did not testify that the defendant doctor's actions contributed to the patient's symptoms.

The plaintiffs reference notes by the surgeon who revised the patient's initial knee replacement. These state that: (1) prior to the second surgery, the surgeon told the patient that an internal rotation of the replacement joint's tibial

component "could possibly cause his pain and [inflammation]"; (2) the surgeon thought that this rotation "may be leading to . . . significant pressure on [the patient's] . . . soft tissue where his symptoms are worst"; and (3) following the second surgery, the patient's "pain is minimally improved over preoperative status" and "improving daily." The plaintiffs also point to a progress note by another doctor stating that the patient's "[s]ymptoms were thought to be due to malrotation of tibial component of knee replacement."

However, neither of these doctors testified at trial. Thus, they were not qualified by the trial court or subject to cross examination. Furthermore, their notations do not provide the "quantum of expert testimony necessary." Beckles, 160 N.H. at 125 (stating medical expert's competent opinion that defendant's negligence "probably caused" harm establishes quantum of expert testimony necessary).

Accordingly, we conclude that the record, viewed in the light most favorable to the plaintiffs, contained insufficient evidence of causation and, thus, no contrary verdict could stand. See St. Pierre, 145 N.H. at 621.

We next address whether the trial court erred by denying the plaintiffs' request to recall their expert witness to testify regarding causation after he had been excused and the defendants had moved for a directed verdict. Superior Court Civil Rule 36(d)(3) provides that, "[a]fter a witness has been dismissed from the stand, the witness cannot be recalled without permission of the court."

We review the trial court's decision not to allow a witness to be recalled under our unsustainable discretion standard. State v. Smart, 136 N.H. 639, 668 (1993). To succeed, the plaintiffs must show that the trial court's decision was clearly unreasonable or untenable. Id. We agree with the plaintiffs that Rule 36(d)(3) does not require a showing of good cause. Cf. Super. Ct. Civ. R. 1(d) (allowing trial court to waive any rule "[a]s good cause appears and as justice may require"). Accordingly, we need not address the cases that the plaintiffs cite that concern that requirement.

The plaintiffs argue that the trial court failed to exercise its discretion and "misapprehended the meaning of the rules" because it was "under the misimpression that the rule required certain conditions to be met." On the contrary, the trial court noted that this was not a situation in which the plaintiffs sought to recall the expert to rebut subsequent testimony or to respond to an unanticipated issue, but, instead concerned a missing "element that is required by the Plaintiff to be proven, by statute through an expert witness."

The trial court observed that this was "a critical gap in the testimony, it can only be made up by an expert and [the plaintiffs] told me there are no other experts to be testifying." It stated that the jury could not be allowed to speculate regarding the cause of the patient's pain. It acknowledged that it could not

3

discern whether the plaintiffs' failure to elicit the expert's testimony on causation was "either intentional or an inadvertence." It determined that the decision turned upon "whether or not . . . justice and fairness call[ ] for recalling [the expert]."

In deciding not to allow the plaintiffs to recall the expert, the trial court considered that: (1) the plaintiffs' counsel did not perceive the lack of testimony regarding causation until "it was brought to the attention of the court by Defense counsel that it was a critical area that had not been addressed"; (2) the plaintiffs did not seek to recall the expert when he was "just beginning to leave the stand but before another witness was called," cf. State v. Duff, 129 N.H. 731, 736 (1987) (affirming trial court's discretionary decision to allow State to recall witness, after witness left stand but prior to calling next witness, to identify defendant, when State had just learned that witness could identify defendant); (3) the plaintiffs had rested for the purposes of expert testimony, having informed the court that they would not be calling other experts; and (4) as a result, there was no reason to be more willing to allow the expert to be recalled because the plaintiffs had not rested entirely. It noted that the plaintiffs had questioned the expert directly for approximately two hours and had also engaged in re-direct questioning.

The plaintiffs argue that they would not receive an unfair advantage from being allowed to recall the expert. However, the trial court noted that, having been informed of the problem by the defendants, the plaintiffs had "the opportunity to tell your witness what you're going to bring him back to testify to." The plaintiffs argue that the defendants would not be disadvantaged by their recalling the expert because it would not take long and they had not rested. However, recalling the expert would have continued the trial. Moreover, the defendants had already, upon the plaintiffs' representation that they had no other expert opinion testimony to proffer, revealed the deficiency in the witness's testimony.

The plaintiffs argue that "the court took the position that if the counsel was at fault in failing to frame the question or pose a question or for having forgotten to ask a specific question, then the rules offer no relief at all." They contend that "[h]uman error . . . should weigh in favor of granting relief." However, the trial court considered the nature of the missing evidence and the impact of recall upon all parties. To the extent that the plaintiffs argue that the trial court should have considered lesser "sanctions," directing a verdict for the defendants for a failure of proof was not a sanction at all, but simply a consequence of the plaintiffs' failure to present a prima facie case.

The plaintiffs contend that "[t]he tradition of this state is replete with occasions in both civil and criminal matters where a party has been allowed to recall a witness to the stand before and after they have rested." However, the cases that they cite in support of this proposition addressed issues different from

4

those in the case at hand.  See State v. Silk, 138 N.H. 290, 290 (1994) (declining to address trial court's decision not to reopen evidence to recall complaining witness); State v. Bertrand, 133 N.H. 843, 854 (1991) (stating that prior to granting mistrial, trial court should exhaust alternatives, including giving permission to recall witnesses); State v. Munnis, 130 N.H. 641, 642 (1988) (finding defendant not prejudiced by trial court's discretionary decision to allow State to recall victim to swear her in to cure any defect caused by failing to swear her prior to her testimony); State v. Cooper, 127 N.H. 119, 121 (1985) (addressing constitutionality of discretionary appeals).

The plaintiffs argue that the trial court "put form, substance and technicalities over justice which is contrary to the policies and the long-held tradition of this state."  However, failing to establish a prima facie case is not a mere "technicality" for which the trial court was compelled to allow the plaintiffs a second opportunity to present their case after the defendants had highlighted the deficiency in moving for a directed verdict.  See Smart, 136 N.H. at 668.

Any other arguments in the plaintiffs' brief are either not sufficiently developed, see State v. Blackmer, 149 N.H. 47, 49 (2003), or otherwise do not warrant further discussion, see Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

Dalianis, C.J., and Lynn and Bassett, JJ., concurred.

**Eileen Fox,
Clerk**

5